IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| | : | |
| v. | : | |
| | : | |
| JOSEPH J. CONNORS | : | NO. 06-189 |

**MEMORANDUM ORDER**

Following a three week trial, Defendant Joseph Connors was convicted of one count of bank fraud, in violation of 18 U.S.C. § 1344, and of sixty-four of sixty-five counts of making false statements to a bank, in violation of 18 U.S.C. § 1014. On May 18, 2007, Defendant filed a motion for new trial, judgment of acquittal, or arrest of judgment. After the transcript of the trial was filed of record, the Court directed Defendant to file a brief in support of his motion. While the motion contained several grounds for granting relief, Defendant's brief argues only one issue. He asserts that the evidence was legally insufficient to establish the intent element of any false statement count based on Borrowing Base Certificates submitted to the victim banks on or prior to December 16, 2002.

Defendant bases his argument on the testimony of co-defendant Richard Shaffert. He asserts that Shaffert testified that any false information that Shaffert put in the Borrowing Base Certificate filed on December 16, 2002, was due to Shaffert's own mistake, negligence or carelessness, and that there was a failure of proof of intent to purposefully mislead any financial institution on the fiscal condition of Kleinert's Inc. until after December 16, 2002, when, Defendant appears to concede, the

evidence indicated that he instructed Shaffert not to correct the error. We find that the argument based on Shaffert's testimony regarding the error in the December 16, 2002, Borrowing Base Certificate has no merit.

In deciding a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29, a court must view all of the evidence introduced at trial in the light most favorable to the Government and uphold the verdict so long as "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Voight, 89 F.3d 1050, 1080 (3d Cir. 1996) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The court is required to draw all reasonable inferences in favor of the jury's verdict. United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002). The court is not permitted to weigh the evidence or assess the credibility of witnesses, as both of these functions are for the jury. United States v. Casper, 956 F.2d 416, 421 (3d Cir. 1992). Thus, the defendant bears a "very heavy burden" when challenging the sufficiency of the evidence supporting a jury verdict, United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995), and a finding of insufficiency "should be confined to cases where the prosecution's failure is clear." Smith, 294 F.3d at 476 (quoting United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984)).

So viewed, the trial evidence established long-standing practices conceived by the Defendant, who had the sole real authority over the company's financial dealings, to artificially inflate the fiscal condition of Kleinert's Inc. on the financial disclosure reports the company was required to submit to its lenders under its various revolving credit facilities. Among the schemes employed were the creation of false "bill and hold" transactions, which served to artificially recognize revenues before generally accepted accounting principles would so permit; the creation of false shareholders loans, which artificially inflated the company's accounts receivables; and the creation of a fictitious $1

million Wal-Mart rebate, which had a similar effect on the financial picture the company portrayed to its lenders.

The count relating to the Borrowing Base Certificate filed on December 16, 2002, about which Shaffert testified, is Count 60. Count 60 alleges that the Defendant and Shaffert knowingly made, and aided and abetting the making of, false statements to the Wachovia Bank Group by submitting a false Borrowing Base Certificate showing approximately $1.9 million dollars of borrowing ability under the revolving credit facility. The trial evidence was sufficient to establish that Defendant knew the financial information contained in the December 16, 2002 Borrowing Base Certificate, and those filed both before and after December 16, 2002, was false and was submitted to the banks in order to continue to draw advances on the credit facility when there was no actual borrowing availability.

The Government adduced evidence that Shaffert was hired by Kleinert's Inc. on September 23, 2002. (Tr. 5/1/07 at 12:8-10.) Shaffert reported to Connors. (Id. at 20:7-8.) Under the terms of the company's credit facility, Kleinert's Inc. was required to file weekly Borrowing Base Certificates containing detailed information on accounts receivable, inventory, raw materials and finished goods. (Id. at 22:5-10.) The Borrowing Base Certificates contained formulas that would determine how much Kleinert's Inc. could draw on the credit facility. (Id. at 22:11-16.) The formulas established Kleinert's Inc.'s excess availability; if the result of the calculation was a positive number, the company could borrow additional funds, if the result was a negative number the company was over-advanced and would have to cease operations for want of necessary cash flow. (Id. at 32:13-33:13.) The financial information was prepared each week by company employees in Alabama and sent to the corporate offices in Plymouth Meeting, Pennsylvania. (Id.

at 37:1-5.)  Shaffert would review the information with Defendant Connors who had the final authority on the information entered into the Borrowing Base Certificates.  (Id. at 37:6-38:11.)  Even after Shaffert was given authority to sign the Borrowing Base Certificates in November 2002, Connors retained the ultimate authority on the information they contained.  (Id. at 38:16-21.)

Shaffert testified that the amount of borrowing availability was shrinking in November and December 2002.  (Id. at 38:22-39:3.)  The November 4, 2002, Borrowing Base Certificate showed availability of $2.5 million; one week later the amount had dropped to $1.038 million; by November 18, 2002, the amount was $260,319. (Id. at 40:11-41:14.)  The November 25, 2002, Borrowing Base Certificate, the first such one that Shaffert signed, showed availability of $210,277.  (Id. at 43:13.)  This availability indicated in the November 25, 2002 Borrowing Base Certificate was based on a fictitious $1 million shareholder loan entered into the financial ledgers of the company by Defendant Connors, which had the effect of artificially inflating the company's accounts receivables.  (Id. at 45:17-46-3.)  This availability was also increased by Shaffert's changing certain financial data to decrease slow moving inventory and eliminate cash accruals to improperly inflate the company's accounts receivables.  (Id. at 46:24-47:25.)  Shaffert made these changes after consulting with Connors and getting his approval.  (Id.)

Defendant is correct that the Borrowing Base Certificate filed on December 16, 2002, included an inadvertent double-counting of the already fictitious bill and hold transactions, mistakenly entered into the borrowing calculation by Shaffert.  (Id. at 52:3-8.)  However, given the other evidence of purposeful impropriety in preparing the December 16th submission, as well as the Borrowing Base Certificates filed prior thereto, the fact that some of the incorrect information included in December 16th submission was accidental does not render legally insufficient the

evidence establishing the intent element for Count 60.  Moreover, the mistake in the December 16th submission does not negate the Defendant's intent to make false statements in all the other financial statements submitted to the company's lenders that was clearly established by the Government through the evidence of the fake bill and hold transactions, shareholder loans and the Wal-mart rebate.  Accordingly,

**AND NOW**, this      day of August, 2007, upon consideration of Defendant's Motion for New Trial, For Judgment of Acquittal, or For Arrest of Judgment (Docket Entry # 31), **IT IS HEREBY ORDERED** that said motion is **DENIED**.

BY THE COURT:

S/John R. Padova

John R. Padova, J.