IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :      CRIMINAL
     :
     v.      :
     :
JOSEPH J. CONNORS      :      NO. 06-189


**MEMORANDUM**

**Padova, J.**      **October 9, 2007**

       Following a four week trial, Defendant Joseph Connors was convicted of one count of bank fraud, in violation of 18 U.S.C. § 1344, and of sixty-four of sixty-five counts of making false statements to a bank, in violation of 18 U.S.C. § 1014.  On August 27, 2007, the Court imposed a custodial concurrent sentence of thirty-six months on each of counts 1 through 30 and 32 through 66, to be followed by a three-year period of supervised release, of which the first nine months are to be served on home confinement.  The Court also ordered Connors to make restitution in the amount of $14,092,496, and pay a special assessment of $6,500.  On September 11, 2007, the Government filed a notice of appeal of the sentence imposed.  We issue this Memorandum to explain our reasoning for imposing Connors' sentence, which constituted a downward variance from the advisory Sentencing Guidelines.

       The trial evidence established long-standing practices conceived by the Defendant – who had the sole real authority over the financial dealings of his company, Kleinert's, Inc. – to artificially inflate the company's fiscal condition on the financial disclosure reports it was required to submit

to its lenders under its various revolving credit facilities.  Among the schemes Connors employed to disguise the true nature of the company's financial distress were the creation of false "bill and hold" transactions, which served to artificially recognize revenues before generally accepted accounting principles would so permit; the creation of false shareholders loans, which  artificially inflated the company's accounts receivables; and the creation of a fictitious $1 million Wal-Mart rebate, which had a similar effect on the financial picture the company portrayed to its lenders.

Based on an analysis of the statutory sentencing factors, see 18 U.S.C. §3553(a), and for reasons stated during sentencing and summarized here, we determined to vary from the Sentencing Guidelines recommended range of 78 to 97 months.[1]  We determined that a custodial sentence of 36 months imprisonment, followed by 9 months home detention as part of Defendant's 3 years

---

[1]Using the November 2002 edition of the advisory Sentencing Guidelines, the pre-sentence investigation report, which we adopted as our findings of fact and conclusions of law, calculated Defendant's guidelines range as follows:

- All counts were grouped, pursuant to U.S.S.G. § 3D1.2(d).
- A Base Offense Level of 6, pursuant to § 2B1.1(a).
- A Specific Offense Characteristic enhancement of 20 levels, pursuant to § 2B1.1(b)(1)(L), based on the amount of loss suffered by the banks which fell into the range of between $7 million and $20 million.  The Government and Defendant stipulated that the amount of loss to the banks attributable to Connors' fraud was $14,092,496.
- Since the offense involved sophisticated means, a 2 level increase, pursuant to § 2B1.1(b)(9)(C). The basis for the increase was that the fraud encompassed numerous loan documents, manipulated sales data, and was an elaborate scheme, making this an "especially complex or especially intricate offense."  App. Note 8(B) to U.S.S.G. § 2B1.1.
- Since the evidence showed that Connors was a leader in the fraud scheme, a 2 level increase, pursuant to § 3B1.1(c).

These adjustments resulted in an Adjusted Offense Level of 30.  There was no evidence of obstruction of justice and there are no victim-related adjustments or adjustments for use of a special skill.  However, as Connors put the Government to its proof, he was not entitled to any acceptance of responsibility points under U.S.S.G. § 3E1.1.  Thus, Defendant's Total Offense Level was determined to be 30.  Having no prior contacts with the criminal justice system, Defendant fell into Criminal History Category I, resulting in an advisory Guidelines range of 78 to 97 months.

supervised release, combined with his substantial restitution obligation, was sufficient and not greater than necessary to achieve the goals set forth in 18 U.S.C. § 3553(a). When compared to the advisory Guidelines recommendation of 78 to 97 months, the sentence we imposed based on the statutory factors constituted, an 8 offense level downward variance, a 54% prison time variance, and a 42% custody variance when the home detention is included.

Under § 3553(a), sentencing courts "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." In crafting a sentence, courts must take into account a number of factors, including in pertinent part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for –
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>>> issued by the Sentencing Commission . . . ;
> (5) any pertinent policy statement –
>> (A) issued by the Sentencing Commission . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). For a discretionary sentence to be "reasonable" under the United States Supreme Court's ruling in  United States v. Booker, 543 U.S. 220 (2005), the "record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors." United States

v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006); see Booker, 543 U.S. at 261.  A sentence will not

withstand appeal if those factors were not reasonably applied to the circumstances of the case."

Cooper, 437 F.3d at 329.

The United States Court of Appeals for the Third Circuit has recently expressed concern with

the imposition of **non-custodial** sentences for white collar criminals who would have been given

terms of imprisonment under the Guidelines, vacating and remanding a non-custodial sentence in

a tax fraud case where the advisory Guidelines range was 12-18 months.  See United States v.

Tomko, Case No. 05-4997, 2007 WL 2350765 (3d Cir. Aug. 20, 2007).  In Tomko, the Third Circuit

expressed the view that when the Guidelines,

> drafted by a respected public body with access to the best knowledge
> and practices of penology, recommend that a defendant be sentenced
> to a number of years in prison, a sentence involving no . . .
> imprisonment can be justified only by a careful, impartial weighing
> of the statutory sentencing factors.

Tomko, 2007 WL 2350765, at *5 (quoting United States v. Goldberg, 491 F.3d 668, 673 (7th Cir.

2007).  The Third Circuit expressed particular concern that a non-custodial term would lack any

general deterrence effect on would-be violators, as well as a concern regarding the message such a

sentence sends to the general public when the perpetrator of a significant white collar crime is not

sent to jail.  Tomko at *6-*8.  In reviewing the reasonableness of a non-custodial sentence, Tomko

stated that, "[u]ltimately, 'what we must decide is whether the district judge imposed the sentence

he or she did for reasons that are logical and consistent with the factors set forth in section 3553(a).'"

Id. at *4 (quoting Cooper, 437 F.3d at 330).  Unlike the non-custodial sentence the Court of Appeals

criticized in Tomko, Defendant Connors' custodial sentence, while at a downward variance from the

advisory Guidelines, is nonetheless substantial and logically consistent with the statutory sentencing

-4-

factors.

As the <u>Tomko</u> Court made clear, the "focus is on the qualitative, rather than quantitative, significance" of a variance that results in a non-custodial sentence when the Guidelines call for a substantial prison term.  <u>Id.</u> at *7.  The variance the <u>Tomko</u> Court found unreasonable was a one-hundred percent departure from the advisory Guidelines, allowing Tomko to avoid serving **any** time in a federal prison, a result which the Court stated was inconsistent with the overarching sentencing goals outlined in § 3553(a).  In reaching its sentencing decision, the district judge in <u>Tomko</u> had concluded that a downward variance was merited because of (1) Tomko's negligible criminal history, (2) his record of employment, (3) and his support for and ties in the community and extensive charitable work.  <u>Id.</u> at *8.  The Court of Appeals cautioned, however, that "[i]f sentences that vary substantially from the norm based on facts that are plainly unexceptional are allowed to proliferate, we will fail to fulfill our role in moving sentencing in the direction of uniformity, as <u>Booker</u> envisioned."  <u>Id.</u>  It concluded that, while such factors as the district court considered are proper under the statutory factors,

> Viewed cumulatively, the three factors considered by the District Court as mitigating factors – negligible criminal history, support and ties in the community and charitable work, employment record – pale in comparison to the numerous § 3553(a) factors suggesting that a term of imprisonment is warranted in cases of tax evasion as willful and brazen as Tomko's.  A sentence of mere probation, in light of these factors, is unreasonable and it was an abuse of discretion for the District Court to impose it.  We do not rule that any below-Guidelines sentence would have been improper in this case, only that the District Court abused its discretion in rendering this particular below-Guidelines sentence.  The new advisory Guidelines regime leaves ample room for discretion on the part of the District Court, but "discretion, like the hole in the doughnut, does not exist except as an area left open by a surrounding belt of restriction."

<u>Id.</u> at *12 (quoting <u>Compagnie des Bauxites de Guinea v. Insurance Co. of North Am.</u>, 651 F.2d 877,

884 (3d Cir. 1981) (quoting R. Dworkin, Taking Rights Seriously 31 (1977))). <u>Tomko</u> thus teaches that, while a below-Guidelines sentence will not always be an unreasonable one, a variance to a non-custodial sentence is qualitatively unreasonable when the Guidelines call for a substantial prison term because it is not logically consistent with the sentencing goals articulated in § 3553(a).

In arriving at our sentencing decision for Connors, we concluded that, qualitatively, a term of imprisonment was required. Under the holding of <u>Tomko</u>, Defendant did not qualify for a non-custodial sentence because such a sentence would have been qualitatively unreasonable given the nature of the offense. We then considered the advisory Guidelines range and the other sentencing factors, concluding that a Guidelines sentence was greater than was necessary to comply with the purposes of the Sentencing Act. We concluded that consideration of the nature, circumstances, and seriousness of Defendant Connors' offense conduct had to include, *inter alia*, consideration of the fact that the Defendant did not directly obtain the millions of dollars in fraud proceeds, and that his conduct was essentially motivated by a desire to save the company and to save the jobs of its employees. We distinguished Defendant's culpability from other fraud defendants by recognizing that, in our experience, as well as that of the Court's Probation Department, greed and pure personal gain are usually the driving force for many, if not most, fraud offenders that receive Guidelines sentences in this District. (Tr. Aug. 27, 2007, 75:13-77:7.) We concluded that the lack of personal profit and the Defendant's motivation were relevant to the nature and circumstances of the offense conduct, and could be considered along with all other appropriate factors regarding sentencing disparity.

The issue of whether lack of greed is a valid consideration under the statutory factors, as opposed to the Guidelines, was the subject of much exchange between the Court and the

Government at sentencing.  The Government argued that lack of personal gain cannot be taken into consideration under the statutory factors, citing United States v. Carlson, No. 06-3372, 2007 WL 2350182, *3 (8th Cir. August 20, 2007).  Carlson, like Tomko, received a one-hundred percent downward variance to a non-custodial probation sentence following a guilty plea to charges of failing to remit trust fund taxes.  In making its sentencing decision, the District Court in Carlson distinguished an earlier Eighth Circuit decision, United States v. Ture, 450 F.3d 352 (8th Cir. 2006). In Ture, the Court of Appeals for the Eighth Circuit reversed a one-hundred percent, five-offense-level variance where the defendant had a similar record (first offense) and had been found guilty of similar conduct (tax evasion). Id. at 354-55, 357-59.  While, the District Court in Carlson recognized the similarities between Carlson's case and Ture, noting that both involved first offenses, expressions of remorse, and cooperation with the prosecution, it nonetheless distinguished Ture on the basis that, unlike the defendant in Ture, Carlson had a significant record of charitable activities, had not enlisted an employee to assist in the crime, and was motivated to commit the crime because of a financial crisis, rather than personal gain.  Carlson, 2007 WL 2350182, *3.

In vacating the sentence, the Eighth Circuit did not hold that consideration of Carlson's non-personal gain motivation was improper under the statutory factors.  Rather, it held that, even acknowledging that Carlson's motivation was different from the record in Ture, the nature, circumstances, and seriousness of Carlson's own crime were not sufficient to justify the imposition of a one-hundred percent, seven-level variance, when it had reversed Defendant Ture's one-hundred percent, five-level variance.  The Court, focused on the similarities between the two cases and the fact that Carlson failed to remit almost twice as much in taxes for a longer period of time, determined that Ture could not be distinguished and that a non-custodial sentence was unreasonable on the

record presented.  Carlson, 2007 WL 2350182, *3.

We do not read the Third Circuit's decision in Tomko, or the Eighth Circuit's decision in Carlson, to in any sense foreclose consideration of a fraud defendant's motivation when the sentencing court is evaluating the nature and circumstances of the offense and the history and characteristics of the defendant.  Motivation is relevant to both: the reason why an offender engages in a criminal conduct is clearly a circumstance of his offense since it can both mitigate and aggravate culpability.  See, e.g., Hawkins v. Hargett, 200 F.3d 1279, 1283 (10th Cir. 1999) (stating that culpability is relevant element in conducting Eighth Amendment proportionality review of sentence, and can be weighed by examining factors such as the defendant's motive and level of scienter).  So too, motivation can demonstrate how the characteristics of one offender distinguish him or her from another since it can be material to the offender's state of mind in committing the offense.  See, e.g., Third Circuit Model Jury Inst. § 5.04 (Sept. 2006) (providing that evidence of a defendant's motive may establish intent).

The Third Circuit's conclusion that the sentence in Tomko was unreasonable was clearly based upon the fact that the defendant would avoid serving **any** time in federal prison – a qualitatively unreasonable result that was inconsistent with the sentencing goals drafted by Congress in § 3553(a)(2)(A) and (B) – as well as the sentencing judge's reliance upon "plainly unexceptional" facts.  Id., 2007 WL 2350765, at *8.   The Government's argument at sentencing, that Connors' motivation was not relevant to the sentencing decision – other than as a factor the United States Sentencing Commission has already addressed in formulating the Guidelines – ignores the fact that Congress has mandated that the sentencing court equally consider the nature and circumstances of offense and the history and characteristics of the defendant, along with any pertinent policy

statements issued by the Sentencing Commission, in crafting a sentence that is sufficient, but not greater than necessary, to effectuate Congress's sentencing goals.

Applying this factor, along with all of the other statutory factors we addressed at Connors' sentencing hearing, we concluded that a downward variance from the Guidelines range was appropriate.  The sentence imposed constituted a 54% prison time variance, and a 42% custody variance when the home detention is included.  Unlike the defendant in <u>Tomko</u>, Connors has received a substantial term of incarceration.  We find that the Government's argument at sentencing that a variance would be unreasonable, raises a purely quantitative position – one which cannot be advanced in the name of <u>Tomko</u>, because the prison term actually imposed is substantial.[2]

Other sentencing factors also impacted our decision to vary downward.  As we expressed at sentencing, Connors' criminal behavior, although long-standing, was aberrant.  Other than his actions in this case, Defendant had led an admirable life, raising three children in an intact home, and supporting his mother-in-law and a disabled brother.  He has never had any personal financial difficulties.  Also, the Government did not argue, and we did not find, that there was any significant possibility of recidivism in this case.  Nothing in Connors' background suggests that there was any need for the sentence to provide him with needed educational or vocational training, medical care, or other correctional treatment.  He is highly educated with marketable skills, no prior substance abuse history, and no prior criminal history.

Finally, we took note at sentencing that the Court had received approximately fifty-five letters

---

[2]In <u>Tomko</u>, the defendant's advisory Guidelines range was twelve to eighteen months, <u>id.</u> at *2, which the Court characterized as substantial.  In <u>Ture</u>, the defendant's advisory Guidelines sentence was also twelve to eighteen months.  <u>Id.</u> 450 F.3d at 355.  In <u>Carlson</u>, the range was eighteen to twenty-four months.  <u>Id.</u>, 2007 WL 2350182, *1.  The sentence imposed here, thirty-six months, is, *a fortiori*, substantial.

on Connors' behalf, with a list of seventy-six additional names that had written in support of the Defendant, as well as a letter from the bankruptcy trustee representing the victims of Connors' fraud. (Tr. Aug. 27, 2007, 3:13-25.) The letters came from all aspects of Defendant's associations, including family, co-employees, neighbors, school friends, and business contacts. We found as fact from this history that Defendant, except for his criminal conduct in this case, has lived an admirable life and contributed wholesomely to his associations and his community. (Id. at 57:11-24.)

The letter from the bankruptcy trustee reported that he and his counsel investigated and identified a number of parties, including accountants and outside counsel for Kleinert's, Inc., who had enabled the continuation of the line of credit in this case and bore some responsibility for the extent of the fraud loss. The trustee asked that the Defendant's sentence reflect proportionally his overall part in the matter, but not dramatically exceed that of any other culpable parties, indicted or unindicted. We took into consideration these circumstances in evaluating and balancing the sentencing disparity factor in this case.[3]

For these reasons, we determined that a Guidelines sentence was greater than necessary and that a downward variance was appropriate.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.

_____

[3] At the time Connors was sentenced his two co-defendants, who had cooperated with the Government's investigation, had not been sentenced. We note, in consideration of the sentencing disparity factor, that both co-defendants, in addition to their cooperation for which the Government moved for downward departures, have serious medical conditions that independently warranted variances from the advisory Guidelines.

-10-